## ADCOCK *v.* McDONALD.

No. 39649 May 2, 1955 79 So. 2d 715

*Livingston & Fair,* Louisville, for appellant.

*Strong & Smith,* Louisville, for appellee.

McGehee, C. J.

This is an appeal from a judgment for $5,000 damages recovered by the appellee, M. H. McDonald, against his son-in-law, the appellant John S. Adcock, on account of personal injuries sustained when a pickup truck of the appellant, which was being driven by the appellee, went off down an embankment on the driver's left side of the road when he applied the brake to avoid striking a car in front of him, which is alleged to have suddenly stopped.

The proof on behalf of the plaintiff McDonald was to the effect that on March 18, 1953, the appellant came to the home of the appellee in the pickup truck owned and maintained by him, and upon learning that the appellee was preparing to go to the Town of Philadelphia, Mississippi, to get some cottonseed, the appellant suggested that the appellee use this pickup truck in making the trip, and that he have the flat tire, which was then in the pickup truck, repaired in Philadelphia while there; that the appellee complied with this request and that on returning from Philadelphia he overtook a Ford automobile traveling in the same direction about 70 or 75 feet ahead of the pickup truck which was then being driven by the appellee; that the Ford car was suddenly stopped, its rear lights flashed on, and that the situation then

confronting the appellee was such as to cause him to immediately apply the brake with the result that the pickup truck left the right lane and went off down the embankment on the left side of the highway on account of a defective brake which caused the left front wheel to grab or become locked.

The theory of negligence relied on by the plaintiff is that the appellant, as owner of the pickup truck, knew of the defective condition of this brake and that when it was suddenly applied it would lock the left wheel, and that the appellant negligently failed to inform the plaintiff of such defect; that the plaintiff had not recently driven the pickup truck and did not know until he applied the brake immediately before the accident that his action in doing so would cause the left front wheel to lock and the truck to swerve to the left off the highway.

The plaintiff introduced a mechanic of about twenty years experience, who was then employed by the International Harvester Company, and who testified that the defendant came to his home "something like a week or less" before the accident and said that "whenever he had to apply his brakes that if he applied them suddenly that they had a grab on the left front wheel, and at the dinner hour I pulled the wheel off to see if I could fix it, pulled the wheel off and found the lining was almost worn out and would give it a cause to grab on quick service of the brakes." Q. "What wheel was that on?" A. "The left front wheel." This witness says that the defendant's wife was in the hospital in De Kalb at that time and said that he did not then have time to have it fixed, and that he then told the defendant that "with normal use of the brakes it would not hurt him any, or would not pull him, but if he got on them suddenly it would lock and maybe cause him trouble." Q. "What do you mean by trouble?" A. "It would throw him sideways or to the left." Q. "Could you control it if you put on the brakes full force?" A. "No, sir, you could not control it." This witness was asked on

cross-examination: "On the occasion when he came in while his wife was in the hospital, isn't it a fact that you told him then that his wheels might lock when the brake was applied, or might never lock again?" A. "I told him if he jammed them they would lock." Q. "Didn't you tell him that they might not lock?" A. "No, sir." Q. "Are you sure of that, Mr. Burks?" A. "I am positive."

The defendant admitted when introduced as an adverse witness by the plaintiff that he "had gone to Mr. Burks with that truck in connection with a defective brake that was on it." The defendant was also asked, "Did he tell you that the brake was bad but he could not fix it right then?" and answered, "Yes, sir, he told me that." He was then asked whether or not Mr. Burks did not tell him "If you did not drive the car fast and did not put the brake on with force it might not give you any trouble," and answered "That is right." Q. "But he told you that it would be dangerous to put the brake on with full force?" A. "Yes, sir." Q. "Well, fast or slow, if you put the brake on with force it would lock just the same, you knew that?" A. "Yes, sir." The defendant further admitted that the mechanic Burks "told me he figured it was a worn brake lining and that was causing it to lock." He further admitted that he did not inform the plaintiff of the defective condition of the brake.

The defendant had told the mechanic about having put on his brakes before he got to a rough place, and that it pulled the truck a little to the left. He testified in response to a question in that behalf that after having talked with the mechanic he was very careful and would drive the truck very slowly and apply the brake very lightly, and when he was asked the question "You would drive it very slowly and apply the brakes very lightly?", he replied "Yes, sir." Q. "Because you knew it might grab on you?" A. "That is right."

In contending that the defendant was entitled to a directed verdict in his favor, it would appear that he does

not attach sufficient importance to the foregoing testimony on behalf of the plaintiff. In his motion for a new trial the defendant did not allege as a ground therefor that the verdict of liability against him was against the great or overwhelming weight of the evidence, and the case could not be reversed and remanded on that ground even if we should think that the verdict is against the preponderance of the evidence.

The plaintiff testified that he did not find out that there was anything wrong with the brakes until he pressed down on them on the occasion of the accident. He said "I was 70 or 75 feet from the car (meaning the Ford car ahead of him) and had plenty of time to stop and I stepped on the brakes and couldn't stop." Q. "Could you control the car?" A. "No, sir, I did not have no control over the car." He had driven the car from his home for a distance of about sixteen or seventeen miles to Philadelphia, and had traveled about two miles from there on his return when the accident occurred, but he testified that he had not had occasion to apply the brakes with any force while driving the truck on that occasion until immediately before the accident. He said "I was following along behind this car and had plenty — was giving him plenty of room all of the time and all at once the lights come on and I popped my brake on, I eased my brakes on, I did not jam them, and when I did that I went to the left and I don't remember any more about it." Q. "Do you know whether the car (meaning the pickup truck) turned over or not?" A. "It was 31 1/2 steps from the time it turned over and until it stopped." Q. "Was that a steep embankment there?" A. "Yes, sir." He later admitted that it was not "so awfully steep," and also later testified that "I pushed my brakes on hard enough to keep from running into him." It is undisputed that the plaintiff was not running more than "around 35 or a little better" miles per hour.

It is argued on behalf of the defendant that in the absence of any proof that there was any car approaching

from the direction in which the Ford and the pickup truck were traveling, the plaintiff could have driven the pickup truck into the left lane and have passed the Ford without applying his brakes, and that the accident may have been due to some other cause than a defective brake on the left wheel. █ But we are of the opinion that the proof was sufficient to make an issue for the jury as to the proximate cause of the accident. █ The plaintiff was not required by his proof to exclude every other reasonable hypothesis, but was only required to convince the jury by a preponderance of the evidence that the accident was proximately caused by the admittedly defective condition of this brake or lining on the left wheel. The proof showed that the lining was worn and the testimony is in conflict as to whether or not if the lining was worn the application of the brake would cause the wheel to lock.

 █ We are of the opinion that both the testimony of the mechanic Burks and the conversation of the defendant with him were sufficient to entitle the jury to find from a preponderance of the evidence that the defective condition of the brake or lining in the left front wheel caused this truck to swerve to the left and go off the embankment.

 █ The defendant complains of the giving of an instruction in favor of the plaintiff to the effect that "if you believe from a preponderance of the evidence in this case that the brake on the left front wheel of defendant's truck was defective to the extent that it would grab or lock on some occasions when the brakes were applied, and you believe from a preponderance of the evidence this caused it to be dangerous to operate said truck, and you further believe from a preponderance of the evidence that the defendant knew of such condition and with such knowledge authorized and permitted the plaintiff to drive said pickup truck without disclosing the said defective condition to the plaintiff, and you further believe from a preponderance of the evidence that

the plaintiff did not know of the defective condition of said brake prior to the accident, and you further believe that as a proximate result of the defective brake on said vehicle the plaintiff was injured, then it will be your duty to return a verdict in favor of the plaintiff.''

The principal complaint in regard to this instruction is that it contains the words ''on some occasions,'' whereas the defendant had not had trouble with the brake except on *one* occasion prior to the time that he either requested or permitted the plaintiff to use the truck without informing him of such defect. But we do not think that the use of the words ''on some occasions'' in the instruction would constitute reversible error, and especially in view of the conversation had between the defendant and the mechanic Burks hereinbefore quoted, and where the defendant virtually admits in his own testimony that he knew that the brake would grab or lock unless he drove the truck very slowly and carefully, and avoided applying the brake suddenly. He should have known that as a reasonable and probable consequence of his failure to inform the plaintiff of the defect he would likely have occasion to apply the brake suddenly on this trip to Philadelphia and return.

Finally, it is argued on behalf of the defendant that the verdict is so grossly excessive as to evince passion and prejudice against the defendant on the part of the jury. It would unduly and further prolong this opinion to review in detail the testimony of the plaintiff and his physician as to the extent of the injuries which he sustained as a result of the accident. Suffice it to say, we have carefully studied the testimony in that behalf, which is wholly undisputed, and we are of the opinion that the verdict is not so grossly excessive as to enable us to say that it evinces passion and prejudice against the defendant on the part of the jury.

The verdict and judgment appealed from must therefore be affirmed.

Affirmed.

*Kyle, Arrington, Ethridge* and *Gillespie, JJ.,* concur.